SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Borough of Seaside Park v. Shree Jyoti, LLC (A-2-25) (089599)**

**Argued March 16, 2026 -- Decided August 10, 2026**

**JUSTICE NORIEGA, writing for the Court.**

In this condemnation action, the Court considers a question of first impression: whether a municipality must specify -- within the text of a municipal ordinance authorizing the taking of private property -- the particular public use intended for that property.

On November 15, 2021, the Borough Council of Seaside Park passed a resolution authorizing the acquisition by eminent domain and the appraisal of the Desert Palm Inn (the Property), which was owned by Shree Jyoti, LLC. Prior to the appraisal, a certified letter was sent to Shree Jyoti. A subsequent certified letter was sent by the appraiser. Both letters were signed for by "R. Kania"; the record reveals that Ramesh Kania was the principal of Shree Jyoti, and the owner of the Property.

On April 14, 2022, the Council passed an ordinance authorizing the acquisition of the Property. The ordinance stated that the taking would "promote and protect the health, safety and welfare of the residents of the Borough" and that "the acquisition of the property is in the furtherance of a public use and purpose," but it did not specify the intended public use of the Property. On April 25, three days before the ordinance was to be voted on, Kania wrote to the Council and mayor, claiming he had not received notice of the appraisal or negotiations and questioning the asserted public use. On April 27, Shree Jyoti's counsel sent the Borough a letter reiterating the claims. The ordinance passed at the Council's April 28 meeting. After exchanges of letters and emails between the Borough and Shree Jyoti, the Borough filed its complaint in condemnation on July 19, 2022.

Shree Jyoti challenged the complaint on the ground that the ordinance failed to specify a public use. The trial court agreed and dismissed the complaint without prejudice. The Borough promptly filed a second, amended complaint that identified the intended public use as "including, but not limited to, a public parking lot together with electric vehicle charging infrastructure." The trial court denied Shree Jyoti's second motion to dismiss, and the Appellate Division affirmed. The Court granted certification. 261 N.J. 565 (2025).

1

**HELD:**  The Court finds no support in the relevant statutes and case law for a requirement to specify, within the ordinance authorizing the taking, the public purpose for which private property is being taken.  Neither the Eminent Domain Act (EDA) nor the Local Lands and Buildings Law (LLBL) requires a municipality to set forth the particular public purpose for a taking in the ordinance authorizing condemnation.  In affirming the judgment of the Appellate Division, however, the Court underscores that municipalities should, as a matter of best practice, identify the intended public use for properties they seek to condemn as early as practicable.

1.  The power of eminent domain in New Jersey is rooted in the State Constitution, which further authorizes the Legislature to delegate that power to political subdivisions of the State, including municipalities.  Once a municipality exercises its power of eminent domain, a reviewing court will not disturb that decision absent an affirmative showing of fraud, bad faith or manifest abuse.  The New Jersey Constitution, like its federal counterpart, requires that private property be taken only for a public use and with just compensation.  See N.J. Const. art. I, ¶ 20; U.S. Const. amend. V.  The definition of "public use" is expansive.  However, although case law addresses the scope of, and challenges to, an asserted "public use," New Jersey courts have not directly addressed the specific question of whether the ordinance authorizing a taking must itself state the public use.  The public use must be identified so that it can be evaluated for constitutional compliance, even if the courts defer to the legislative judgment in most cases.  But no statute or case law in this State directly addresses when, precisely, the condemnor must state the public use contemplated.  As a result, the issue must be resolved by reference to the statutory text and structure.  (pp. 11-14)

2.  The EDA, N.J.S.A. 20:3-1 to -50, establishes the procedure for the legislative power of eminent domain.  The Court reviews the EDA and notes that it makes no mention of the authorizing ordinance or what that ordinance must contain.  The LLBL, N.J.S.A. 40A:12-1 to -30, meanwhile, provides that a municipality may acquire property "by ordinance," but it does not require that the ordinance specify the public use for which the property is being acquired, N.J.S.A. 40A:12-5(a).  The statute does not set forth any requirements for the ordinance beyond the need for its adoption -- it is silent as to the contents of the ordinance.  The Court finds the EDA and LLBL unambiguous in their silence.  Neither establishes any requirement that the condemning municipality specify the intended public use for the property it is taking in the ordinance authorizing the acquisition of the property.  Should the Legislature determine that such a requirement is appropriate, it remains free to amend the statute to expressly require that the authorizing ordinance specify the intended public use.  Nevertheless, the absence of a statutory mandate does not relieve municipalities of their obligation to act fairly in the exercise of their eminent domain power.  Accordingly, although the law does not require that the intended use be specified in the authorizing ordinance, municipalities should, as a matter of best

2

practice, express the public use as early in the process as possible. Doing so ensures transparency, facilitates meaningful participation of affected owners, and upholds the public trust inherent in the exercise of this extraordinary governmental power. (pp. 15-17)

3. Here, the Borough did not violate any statutory, constitutional, or common law principles by omitting a specific public use from its authorizing ordinance. As detailed above, no law requires a municipality to articulate the intended public use in the ordinance itself. And the record demonstrates that the Borough identified the public use -- specifically, a public parking lot with electric vehicle charging infrastructure -- at the time it filed its amended complaint. This disclosure was made in sufficient time for the trial court to consider any challenges to the stated public use. Shree Jyoti did not raise any substantive challenge to the validity of the Borough's asserted public use, and the record casts doubt on the allegations that Kania was unaware of the pending condemnation. Even if, as the dissent highlights and the Borough conceded at argument, the Borough might have better "turned square corners" by disclosing the intended public use earlier in the process, the dispositive issue here is not whether the Borough could have acted with greater candor or efficiency, but whether the law required it to do so at the time. The Court notes that although the Borough's actions in this case did not run afoul of any statutory requirement, the Borough has spent the last four years involved in a matter that likely could have been resolved by simply disclosing the intended public use at the earliest reasonable point. (pp. 17-21)

**AFFIRMED.**

**JUSTICE HOFFMAN, dissenting,** finds that the Borough's refusal to answer Shree Jyoti's April 27 inquiry about the public purpose for the taking -- despite being aware of the intended public purpose by March 2022, at the latest -- is a failure of the Borough's obligation to turn square corners. Justice Hoffman agrees that the LLBL and EDA do not expressly require a municipality to state the public purpose for the taking in the authorizing ordinance but would reverse on the basis of the square corners doctrine, which mandates that municipalities comport themselves with transparency, candor, and integrity. Justice Hoffman respectfully recommends that the Legislature consider requiring that municipalities disclose the intended public purpose for the property in question at the time of adopting an ordinance authorizing the taking of that property.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, and FASCIALE, join in JUSTICE NORIEGA's opinion. JUSTICE HOFFMAN filed a dissent.**

3

Borough of Seaside Park,

Plaintiff-Respondent,

v.

Shree Jyoti, LLC,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| March 16, 2026 | August 10, 2026 |

Peter H. Wegener argued the cause for appellant
(Bathgate Wegener & Wolf, attorneys; Peter H. Wegener,
on the briefs).

Robin La Bue argued the cause for respondent
(Rothstein, Mandell, Strohm, Halm & Cipriani, attorneys;
Robin La Bue, on the brief).

Rudy Randazzo submitted a brief on behalf of amicus
curiae Casino Reinvestment Development Authority
(Riker Danzig, attorneys; Rudy Randazzo and Stuart M.
Lederman, of counsel, and Michael Antzoulis, on the
brief).

JUSTICE NORIEGA delivered the opinion of the Court.

In this condemnation action, we consider a question of first impression: whether a municipality must specify -- within the text of a municipal ordinance authorizing the taking of private property -- the particular public use intended for that property.

Here, the Borough of Seaside Park issued an ordinance authorizing the taking of the Desert Palm Inn (the Property), which was owned by Shree Jyoti, LLC. The ordinance expressly stated that the taking was for a "public use," and no one challenges the validity of the public use that was ultimately identified during the course of litigation. Shree Jyoti, however, argues that the failure to identify a specific public use within the ordinance itself renders the procedure constitutionally deficient.

We find no support for that contention in either the relevant statutes or the case law. Neither the Eminent Domain Act (EDA), N.J.S.A. 20:3-1 to -50, nor the Local Lands and Buildings Law (LLBL), N.J.S.A. 40A:12-1 to -30, requires a municipality to set forth the particular public purpose for a taking in the ordinance authorizing condemnation. We therefore affirm the judgment of the Appellate Division.

We also underscore, however, that municipalities should, as a matter of best practice, identify the intended public use for properties they seek to condemn as early as practicable. Doing so will ensure transparency, facilitate

2

meaningful participation by affected property owners, and conserve municipal resources and uphold public trust in the government's exercise of eminent domain.

I.

A.

On November 15, 2021, the Borough Council passed Resolution 300-2021, authorizing acquisition of the Property by eminent domain and directing the Borough's appraiser to prepare an appraisal.[1] The Resolution authorized the preparation of "an appraisal for the property . . . known as 1505-17N Ocean Avenue in the Borough of Seaside Park for the purpose of acquiring the property through Eminent Domain for public use." (emphasis added). Prior to the appraisal, a certified letter was sent to Shree Jyoti, inviting the corporate property owner to accompany the appraiser for the inspection. The certified

---

[1] On October 28, 2021, the Borough adopted Resolution 285-2021, authorizing a preliminary investigation under the Local Redevelopment and Housing Law (LRHL) to determine whether the Property should be designated as an area in need of redevelopment and subject to condemnation. This redevelopment pursuit initiated the process, but as evidenced by the operative, amended complaint, the Borough relied upon its condemnation power pursuant to the LLBL instead. The record does not reflect whether the LRHL efforts were ultimately carried to fruition. Although not relevant to this Court's ultimate conclusions, the record reflects that the public hearing conducted pursuant to the LRHL process documented extensive code violations and a history of police incidents at the property; these findings are cited in the record as the basis for the Borough's decision to pursue acquisition.

3

mail receipt, dated December 16, 2021, bears the apparent signature of an "R. Kania." The record reveals that Ramesh Kania was the principal of Shree Jyoti, and the owner of the Property. A subsequent letter was sent by the appraiser on December 23, 2021, which also included a certified mail receipt, again bearing the signature of "R. Kania," and dated December 27, 2021. The appraiser's report was returned to the Borough's counsel on February 25, 2022, memorializing the efforts made to reach Shree Jyoti.

On April 14, 2022, at a Council meeting, the Borough adopted Resolution 2022-127 to hire an engineering firm to assist the Borough with completing an application related to New Jersey's Electric Vehicle Charging Station funding.

At that same meeting, the Council introduced and passed Ordinance 2022-08 -- the focus of Shree Jyoti's objections -- authorizing the acquisition of the Property under the EDA. The ordinance stated that the taking would "promote and protect the health, safety and welfare of the residents of the Borough" and that "the acquisition of the property is in the furtherance of a public use and purpose," but it did not specify the intended public use of the Property. The ordinance was not adopted until the next regular meeting of the Council on April 28, 2022, during which it was scheduled for a second reading and final vote.

4

Three days before the ordinance passed, on April 25, 2022, Kania wrote to the Council and mayor, claiming he had not received notice of the appraisal or negotiations and that he only learned of the Borough's interest in condemning the Property through a newspaper article.[2] In the letter, he also questioned the asserted public use. On April 27, 2022, the day before the ordinance was set to be voted upon, Shree Jyoti's counsel sent the Borough a letter reiterating Shree Jyoti's claims that there was insufficient notice of the condemnation process and negotiations and listing a host of other alleged procedural defects that it argued should prove fatal to the passage of the ordinance. Finally, the letter asked the Borough to identify "the alleged public purpose of any such proposed acquisition."[3]

The public hearing was held on April 28, 2022, and Ordinance 2022-08 was passed. The record does not reflect the substance of that meeting, and there is no indication that Kania attended.

---

[2] The letter, dated April 25, 2022, was addressed only to the Borough and contains no indication whether it was sent in any other form than regular mail.

[3] The letter, dated April 27, 2022, was addressed to the Borough and sent via Federal Express. It was also emailed to Jean Cipriani, Esq., counsel for the Borough.

The Borough sent Shree Jyoti a letter[4] recounting the Borough's previous efforts to contact Shree Jyoti for negotiations. The letter included the Borough's fair market value offer, and indicated that the Borough was acquiring the property for an unspecified "public project." The letter also provided Shree Jyoti an additional fourteen days to respond, warning that failure to do so would be deemed a rejection and trigger condemnation proceedings.

Email exchanges between counsel ensued. Throughout the month of May, the Borough's attorney repeatedly followed up to request a response to the Borough's offer, meanwhile Shree Jyoti's counsel did not make a counteroffer or engage in substantive negotiations, instead consistently indicating that he was waiting to confer with his client.

The Borough filed its complaint in condemnation on July 19, 2022.

B.

Shree Jyoti challenged the complaint on the ground that the ordinance failed to specify a public use. The trial court agreed and dismissed the

---

[4] The letter is dated April 28, 2022, and states that it was sent via email that same day to Anthony DellaPelle, Esq., counsel for Shree Jyoti. The record does include an email exchange between Robin La Bue, Esq., counsel for the Borough, and DellaPelle, on April 29, 2022, which contains several attachments. However, there is no substantive discussion in these emails, nor is it clear that the April 28, 2022, letter was included among those attachments.

complaint without prejudice. The Borough promptly filed a second, amended complaint on the very same day, this time identifying the intended public use as "including, but not limited to, a public parking lot together with electric vehicle charging infrastructure."[5] Shree Jyoti again moved to dismiss, arguing that the defect persisted because the ordinance itself did not specify a public use and that the complaint's language was too open-ended. The trial court denied this motion, finding the Borough's actions legally sufficient, and it appointed commissioners to determine just compensation.

Shree Jyoti appealed, and the Appellate Division affirmed the trial court's order denying the motion to dismiss the second amended complaint, holding that neither the EDA nor the LLBL required the ordinance to specify the public use and that the Borough's process satisfied statutory and constitutional requirements.

---

[5] During the pendency of this litigation, the Borough identified the construction of a public drinking water well as an additional public use for the property. However, the issue before the Court is whether the original ordinance authorizing condemnation was required to specify a public use at the time of its adoption. The question of whether the Borough may later convert the property to an alternate public use, such as a water well, is governed by N.J.S.A. 40A:12-5(c), which expressly permits conversion to another public use if the original use becomes unsuitable or inconvenient. Neither party disputes the Borough's authority to change the public use under subsection (c); rather, the dispute centers on whether the initial ordinance must have specified a public use at all.

7

The appellate court emphasized that Shree Jyoti was at all times entitled to challenge the validity of the Borough's asserted public use but, notably, never did so in these proceedings. The court held that the Borough's identification of the intended public use in its amended complaint did not undermine the legitimacy of the condemnation. Relying on N.J.S.A. 40A:12-5(c), the court explained that municipalities are expressly authorized to convert acquired property to a different public use if the original purpose becomes "unsuitable or inconvenient," and thus, the inclusion of a public use statement in the complaint, rather than the ordinance, was not a fatal defect. The Appellate Division also rejected arguments that the Borough was "stockpiling" the Property for an unspecified future use.

This Court granted Shree Jyoti's petition for certification, which raised the issue of whether the authorizing ordinance must specify the intended public use for a municipal taking under the LLBL. 261 N.J. 565 (2025). We also granted the Casino Reinvestment Development Authority (CRDA) leave to participate in this matter as a friend of the Court.

## II.

Shree Jyoti contends that the enabling statute, this Court's prior opinions, and the New Jersey Constitution require that an ordinance authorizing a taking specify the intended public use. Shree Jyoti asserts that a

8

plain reading of N.J.S.A. 40A:12-5 supports this position, arguing that subsection (c) of the statute, which permits a change in public use if the property "become[s] unsuited or inconvenient" for its original use, would be rendered meaningless unless subsection (a) is interpreted to require identification of a specific public use at the outset. Shree Jyoti reasons that, without an initial legislative determination of public use by a municipal government, there would be no baseline from which to assess or authorize a subsequent change in use under subsection (c).

Shree Jyoti further argues that the Borough's amended complaint and the mayor's post hoc certification are not substitutes for the required legislative determination of a public use by the governing body. According to Shree Jyoti, this case exemplifies an impermissible "take it now and decide a use later" approach, which undermines both statutory and constitutional safeguards. Shree Jyoti also contends that the Appellate Division's judgment conflicts with recent case law, including Township of Jackson v. Getzel Bee, LLC, 480 N.J. Super. 592 (App. Div. 2025), which the Court has since affirmed, see ___ N.J. ___ (2026), and that the Borough's failure to specify a public use in the ordinance deprived Shree Jyoti of the opportunity to meaningfully challenge the taking at the appropriate stage.

9

The Borough responds that N.J.S.A. 40A:12-5 unambiguously requires only that a municipality adopt an ordinance authorizing the acquisition of private property and imposes no further requirements as to the form or content of that ordinance.  The Borough maintains that it fully complied with all statutory and due process requirements, including providing notice and engaging in bona fide negotiations, as required by the EDA.  The Borough emphasizes that Shree Jyoti failed to cooperate, respond, or participate meaningfully in the negotiation process, despite repeated attempts by the Borough and its appraiser to engage with the property owner.

The Borough further argues that its decision to exercise the power of eminent domain is entitled to substantial deference and is not subject to judicial scrutiny absent a showing of fraud, bad faith, or manifest abuse, none of which have been alleged, let alone established, by Shree Jyoti.  The Borough also notes that the public use for which the Property is being acquired was clearly articulated in its amended complaint and that New Jersey law permits a change in public use after acquisition if circumstances so require, further supporting the flexibility inherent in the statutory scheme.

Amicus CRDA agrees with the Borough that neither the EDA nor the LLBL imposes any requirement that a municipal ordinance authorizing condemnation specify the intended public use.  The CRDA emphasizes that the

10

statutory language is clear and unambiguous and argues that courts should not read into the EDA or the LLBL requirements that the Legislature did not expressly include.  The CRDA contends that the Appellate Division's judgment appropriately recognizes the practical realities of public development and redevelopment projects and that condemning authorities must be permitted the flexibility to articulate the intended public use with sufficient generality to allow for adjustments given changing circumstances and public needs.

III.

A.

The power of eminent domain in New Jersey is rooted in the State Constitution, which provides that "[p]rivate property shall not be taken for public use without just compensation."  N.J. Const. art. I, ¶ 20.  Our Constitution further authorizes the Legislature to delegate the power of eminent domain to political subdivisions of the State, including municipalities.  N.J. Const. art. IV, § 6, ¶ 3; see, e.g., Borough of Harvey Cedars v. Karan, 214 N.J. 384, 388 (2013).  The Legislature has exercised that authority by enacting laws such as the LLBL, an enabling statute that empowers municipalities to acquire property by condemnation for public use.  N.J.S.A. 40A:12-4(a), -5(a).

Once a municipality exercises its power of eminent domain, this Court has long held that a reviewing court will not disturb that decision absent "an

11

affirmative showing of fraud, bad faith or manifest abuse."  See City of

Trenton v. Lenzner, 16 N.J. 465, 473 (1954); Township of West Orange v. 769

Assocs., LLC, 172 N.J. 564, 571 (2002).  As the United States Supreme Court

explained, "[j]udicial deference is required because . . . legislatures are better

able to [assess] what public purposes should be advanced by an exercise of the

taking power."  769 Assocs., 172 N.J. at 572 (omission in original) (emphasis

omitted) (quoting Haw. Hous. Auth. v. Midkiff, 467 U.S. 229, 244 (1984)).

"New Jersey courts traditionally have granted wide latitude to

condemning authorities in determining what property may be condemned for

'public use,' reasoning that it is the province of the Legislature to shape the

contours of the 'public use' requirement."  Ibid. (citing Burnett v. Abbott, 14

N.J. 291, 294 (1954); Lenzner, 16 N.J. at 473).  The New Jersey Constitution,

like its federal counterpart, requires that private property be taken only for a

public use and with just compensation.  See N.J. Const. art. I, ¶ 20; U.S. Const.

amend. V.  The definition of "public use" is expansive, encompassing any use

"that 'tends to enlarge resources, increase the industrial energies, and . . .

manifestly contribute[] to the general welfare and the prosperity of the whole

community.'"  769 Assocs., 172 N.J. at 573 (omission in original) (quoting

Julius L. Sackman, 2A Nichols' The Law of Eminent Domain § 7.02[2] (3d ed.

rev. 1990)).  Moreover, it is not necessary "that the entire community or even

12

a[] considerable portion . . . directly enjoy or participate in the condemned property for the taking to constitute a 'public use.'" Ibid.

Issues and challenges related to "public use" may arise for a variety of reasons. Property owners may challenge a taking by arguing that the stated public use is invalid, pretextual, or a cover for private benefit. See, e.g., Casino Reinvestment Dev. Auth. v. Banin, 320 N.J. Super. 342, 344 (Law Div. 1998) (arguing that the primary purpose of the condemnation was to achieve a private rather than a public benefit); Township of Readington v. Solberg Aviation Co., 409 N.J. Super. 282, 289 (App. Div. 2009) (holding that defendant presented sufficient facts to support the claim that the taking was a pretextual attempt to limit the use of airport property).

At the same time, New Jersey law affords municipalities a degree of flexibility regarding the use of condemned property. Once acquired for a public use, a municipality may later convert the property's use to another public use if the original intended use becomes unsuitable or inconvenient, without the need for a new ordinance. See N.J.S.A. 40A:12-5(c); Township of Millburn v. Pitt, 68 N.J. 424, 427-28 (1975) (holding that N.J.S.A. 40A:12-5(c) sets forth no formal requirements and noting that "the legislative intent to forego the requirement of an ordinance is clear"). Nevertheless, courts have rejected the practice of "stockpiling" land for some undefined future use, as it

13

does not establish necessity or public use.  See Borough of Glassboro v. Grossman, 457 N.J. Super. 416, 430-33 (App. Div. 2019); Casino Reinvestment Dev. Auth. v. Birnbaum, 458 N.J. Super. 173, 191-92 (App. Div. 2019).

However, although our case law addresses the scope of, and challenges to, an asserted "public use," New Jersey courts have not directly addressed the specific question of whether the ordinance authorizing a taking must itself state the public use.  Clearly, the identification of a public use is an axiomatic requirement for the exercise of eminent domain.  See 769 Assocs., 172 N.J. at 572-74.  The public use must be identified so that it can be evaluated for constitutional compliance, even if the courts defer to the legislative judgment in most cases.  See ibid.  But no statute or case law in this State directly addresses when, precisely, the condemnor must state the public use contemplated.  As a result, the issue must be resolved by reference to the statutory text and structure.  We therefore turn to the relevant legislation.

B.

Despite the deference afforded to legislative determinations regarding the exercise of eminent domain, see 769 Assocs., 172 N.J. at 572, the question of whether either or both the EDA and LLBL require a municipality to specify the public use in the authorizing ordinance is one of statutory interpretation,

14

which we review de novo, see Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).  We look first to a statute's plain language, and we look no further if that language is clear.  DiProspero v. Penn, 183 N.J. 477, 492 (2005).  If the statute is ambiguous, however, we may rely upon extrinsic evidence, such as related legislative schemes, to ascertain what the Legislature intended with respect to the disputed provision.  See State v. Cromedy, 261 N.J. 421, 430 (2025).  But we will not "read into a statute words that were not placed there by the Legislature."  State v. Smith, 197 N.J. 325, 332 (2009).  With those principles in mind, we review the statutes the Legislature enacted to enable municipalities to exercise the power of eminent domain.

The EDA establishes the procedure for the legislative power of eminent domain.  Pertinent here, N.J.S.A. 20:3-6 provides that before instituting an action to condemn, the condemnor must engage in "bona fide negotiations" with the property owner, which must include a "written offer" that "set[s] forth the property and interest therein to be acquired, the compensation offered[,] . . . and a reasonable disclosure of the manner in which the amount of . . . compensation has been calculated."  If a condemnee rejects the offer or fails to accept it "within the period fixed in [the] written offer, which shall in no case be less than 14 days from the mailing of the offer, [that] shall be conclusive

15

proof of the inability of the condemnor to acquire the property or possession thereof through negotiations." Ibid. If negotiations fail, only then may the condemnor proceed to file a verified complaint in court. Ibid. The complaint, in turn, must "demand judgment that [the] condemnor is duly vested with and has duly exercised its authority to acquire the property being condemned." Id. at -8. The EDA thus establishes specific procedures that must be followed in the takings process. But it makes no mention of the authorizing ordinance or what that ordinance must contain. See generally N.J.S.A. 20:3-1 to -50.

The LLBL, meanwhile, provides that a municipality may acquire property "by ordinance," but it does not require that the ordinance specify the public use for which the property is being acquired. N.J.S.A. 40A:12-5(a). The statute does not set forth any requirements for the ordinance beyond the need for its adoption -- it is silent as to the contents of the ordinance. See ibid. Subsection (c) of the same statute allows for a municipality to convert property to "any other public use" if it becomes "unsuited or inconvenient for the use for which it was acquired," but does not specify when or how the original use must be identified. See id. at -5(c).

In sum, we find the EDA and LLBL unambiguous in their silence. Neither establishes any requirement that the condemning municipality specify the intended public use for the property it is taking in the ordinance

16

authorizing the acquisition of the property.  Should the Legislature determine that such a requirement is appropriate, it remains free to amend the statute to expressly require that the authorizing ordinance specify the intended public use.

Nevertheless, the absence of a statutory mandate does not relieve municipalities of their obligation to act fairly in the exercise of their eminent domain power.  See F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426 (1985).  As our recent opinion in Township of Jackson v. Getzel Bee, LLC, emphasized, the government must deal forthrightly with property owners in condemnation actions, thus "turning square corners" in all dealings.  ___ N.J. ___, ___ (2026) (slip op. at 23).

Accordingly, although the law does not require that the intended use be specified in the authorizing ordinance, municipalities should, as a matter of best practice, express the public use as early in the process as possible.  Doing so ensures transparency, facilitates meaningful participation of affected owners, and upholds the public trust inherent in the exercise of this extraordinary governmental power.

## IV.

Applying those principles to the present case, we hold that the Borough did not violate any statutory, constitutional, or common law principles by

17

omitting a specific public use from its authorizing ordinance. As detailed above, no law requires a municipality to articulate the intended public use in the ordinance itself. And the record demonstrates that the Borough identified the public use -- specifically, a public parking lot with electric vehicle charging infrastructure -- at the time it filed its amended complaint. This disclosure was made in sufficient time for the trial court to consider any challenges to the stated public use.

Notably, Shree Jyoti did not raise any substantive challenge to the validity of the Borough's asserted public use. The record reflects that prior to the ordinance's passing on April 28, 2022, Kania made no efforts to negotiate in good faith. Under all reasonable inferences, Kania was made aware of the Borough's intentions to condemn the Property. Kania received two letters inviting him to attend the appraisal for his property, as evidenced by the two certified mail receipts bearing his signature, months before the ordinance passed. The record casts doubt on the allegations contained in Kania's April 25, 2022 letter, submitted to the Borough by his attorney on April 27, 2022, claiming that he was unaware of the pending condemnation. Any claim of inadequate notice is undermined by the evidence of multiple certified mailings and the documented efforts by the Borough and its appraiser to engage with

18

him. Kania's persistent lack of response renders his claim of inadequate notice unpersuasive.

Even if, as the dissent highlights and the Borough conceded at argument, the Borough might have better "turned square corners" by disclosing the intended public use earlier in the process, the dispositive issue before us is not whether the Borough could have acted with greater candor or efficiency, but whether the law required it to do so at the time. More specifically, the question is whether the applicable statutes mandated that the public use be specified in the authorizing ordinance, and whether the Borough complied with those statutory requirements, which it did.

Turning to the factual record underlying these statutory requirements, however, we note that contrary to the dissent's characterization, the Borough made repeated timely efforts to contact Shree Jyoti throughout the condemnation process. The dissent's emphasis on the Borough's letter, sent after the Council hearing on April 28, 2022, overlooks the fact that the timing of the letter was consistent with the sequence of events and does not support the inference the dissent seeks to draw. The earliest independently confirmable response from Shree Jyoti's counsel occurred on April 27, 2022. Notably, in that correspondence, any reference to the "public use" for which the property was being acquired appears only in passing, buried in the letter

19

and not as a prominent purpose of the communication. Instead, the letter focused on alleged procedural defects and notice issues. It did not seek clarification or engage substantively regarding the Borough's intended use for the property.

The Borough's response, authored by Jean Cipriani, is dated April 28, 2022, and states that it was sent via email to DellaPelle, counsel for Shree Jyoti. Thus, the Borough responded within 24 hours of receiving correspondence from Shree Jyoti's attorney. There is no evidence in the record of any further substantive response from Shree Jyoti, nor is there any indication that Shree Jyoti or its representative appeared at the public hearing, despite being aware of its occurrence. Moreover, the dissent's claim that the Borough was "stonewalling" Shree Jyoti was not an argument meaningfully developed during the proceedings. Accordingly, the record does not support the implication that the Borough purposely delayed its response until after the hearing.

Moreover, N.J.S.A. 40A:12-5(c) provides the legislative body flexibility by permitting a change in the public use of acquired property if the original use becomes unsuitable or inconvenient, without the need for a new ordinance. This does not imply, as Shree Jyoti contends, that the public use must be stated in the original ordinance. Rather, this statutory protection ensures that

20

municipalities will not be unduly burdened by being bound to an early declaration of their public purpose by granting them the ability to adapt to changing circumstances.  Pitt, 68 N.J. at 427-28.

Finally, we note that although the Borough's actions in this case did not run afoul of any statutory requirement, the Borough has spent the last four years involved in a matter that likely could have been resolved by simply disclosing the intended public use at the earliest reasonable point.  Not only does this align with the government's obligation to "turn square corners" when exercising the significant power of eminent domain, Getzel Bee, ___ N.J. at ___ (slip op. at 23), but it conserves resources for both municipalities and affected property owners.  It is therefore advisable for municipalities to articulate the intended public use as soon as practicable -- ideally, at the earliest opportunity after the public use has been determined, and before litigation commences.

V.

The Appellate Division's judgment is affirmed.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, and FASCIALE, join in JUSTICE NORIEGA's opinion.  JUSTICE HOFFMAN filed a dissent.

Borough of Seaside Park,

Plaintiff-Respondent,

v.

Shree Jyoti, LLC,

Defendant-Appellant.

JUSTICE HOFFMAN, dissenting.

For decades, this Court has steadfastly held that, in the context of a condemnation, a municipality must act with transparency and integrity by "turn[ing] square corners." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426 (1985) (quoting Gruber v. Mayor & Twp. Comm. of Raritan Twp., 73 N.J. Super. 120, 127 (App. Div.), aff'd, 39 N.J. 1 (1962)); Township of Jackson v. Getzel Bee, LLC, ___ N.J. ___, ___ (2026) (slip op. at 23).

The majority purports to reaffirm this obligation, urging municipalities to "identify the intended public use for properties they seek to condemn as early as practicable," reasoning that such disclosure "will ensure transparency." Ante at ___ (slip op. at 2). In the case at bar, however, Seaside Park (the Borough) has done precisely the opposite. The Borough was aware of the intended public purpose for the condemnation of the Desert Palm Inn by March 2022, at the latest. Despite Shree Jyoti specifically asking the Borough

1

for the public purpose on April 27, 2022, one day prior to the operative hearing, the Borough refused to answer, opting to disclose the intended public purpose only when it became necessary to save their dismissed complaint -- at the end of September 2022. Such conduct is the antithesis of transparency.

Though I agree with the majority's holding that the Local Lands and Buildings Law (LLBL) and Eminent Domain Act (EDA) do not expressly require a municipality to state the public purpose for the taking in the authorizing ordinance, I cannot join an opinion that overlooks the Borough's intentional lack of candid engagement. By excusing such conduct, the majority degrades the "square corners" doctrine that asks our public leaders to operate with a baseline level of honesty and integrity.

## I.

"[I]n a variety of contexts," such as government contracts and condemnation actions, our courts have "insisted that governmental officials act solely in the public interest" and, therefore, "<u>must</u> 'turn square corners'" "[i]n dealing with the public." <u>F.M.C. Stores Co.</u>, 100 N.J. at 426 (emphasis added) (quoting <u>Gruber</u>, 73 N.J. Super. at 127). Specifically in condemnation proceedings, a municipality "has an <u>overriding obligation</u> to deal forthrightly and fairly with property owners," and "[i]ts primary obligation is to comport itself with compunction and integrity." <u>Id.</u> at 426-27 (emphasis added). This

2

obligation is especially pertinent for a government taking, "when such drastic action is visited on property owners." Klumpp v. Borough of Avalon, 202 N.J. 390, 413 (2010).

Central to this obligation is the requirement to deal "forthrightly" -- that is, "free from ambiguity or evasiveness." Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/forthright (last visited July 28, 2026). New Jersey courts have consistently recognized that a "[l]ack of transparency may very well result in the legal conclusion that a municipality's actions did not turn square corners." Blackridge Realty, Inc. v. City of Long Branch, 481 N.J. Super. 183, 200 (App. Div. 2025); see also State, by Comm'r of Transp. v. Siris, 191 N.J. Super. 261, 266 (Law Div. 1983) (noting that the Legislature, "through the history, the language and the logic of our condemnation statutes," intended "[f]ull disclosure by the State").

This Court reaffirmed these principles recently in Getzel Bee, LLC, where we concluded "the Township did not act forthrightly or turn square corners in its dealings with the [property owners]" because "[t]he asserted public purpose for the taking was, at times, vague, inaccurate, and pretextual." Getzel Bee, LLC, ___ N.J. at ___ (slip op. at 25). And the majority here, likewise, reaffirms this mandate: "[T]he government must deal forthrightly with property owners in condemnation actions, thus 'turning square corners' in

3

all dealings." <u>Ante</u> at ___ (slip op. at 17) (emphases added). Despite this recognition, the majority's decision excuses conduct that could not be further from "forthright."

II.

A.

Here, where the Borough unequivocally stated at oral argument that (1) it knew the intended public purpose for Shree Jyoti's property before April 2022, and (2) the "square corners" doctrine requires a municipality to state the public purpose of a taking upon being asked, the Borough has failed to "turn square corners."

The Borough was expressly asked when it "kn[e]w that it wanted to take [Shree Jyoti's] property for an electric vehicle charging station and a parking lot." The Borough informed our Court that it "knew before April" -- prior to adopting Ordinance 2022-08 on April 28, 2022 -- and at least six months before this purpose was revealed for the first time in the Second Amended Complaint on September 30, 2022.

The Borough, during oral argument, was also specifically asked whether a "municipality [has] an obligation to articulate the public purpose," if the property owner asks. The Borough's response was crystal clear and telling: "There's no statutory obligation, but I would say <u>in order to turn square</u>

4

corners, the municipality would say we intend to use this for public parking."

(emphasis added).[1]

Thus, by its own account, the Borough failed to "turn square corners." The record before us confirms this failure. On April 27, 2022, Shree Jyoti's counsel requested, in a brief letter, that the Borough "identify the alleged public purpose of any . . . proposed acquisition." Yet, in its response dated April 28, 2022, but sent on April 29, 2022, one day after the public hearing at which Ordinance 2022-08 was adopted, the Borough, though aware of the intended public purpose, stonewalled Shree Jyoti: "As you are aware the Borough intends to acquire the property located at Block 73, Lot 34 for a public project." (emphasis added).

The majority downplays the significance of the Borough's stonewalling in light of its concession that its actions would constitute a failure to "turn square corners" by stating that: (1) the letter did not "engage substantively regarding the Borough's intended use for the property"; (2) the public use was

---

[1] The majority mischaracterizes the Borough's critical concession. The Borough did not concede that it "might have better 'turned square corners' by disclosing the intended public use earlier." Ante at ___ (slip op. at 19). Rather, the Borough conceded that intentionally withholding the public purpose when asked constitutes a flat-out failure to "turn square corners." In other words -- if/when asked -- the Borough was obligated to answer, and it did not.

5

not a "prominent purpose" of the letter, and any reference to "'public use' . . .

appears only in passing, buried" therein; and (3) "the Borough responded

within [twenty-four] hours of receiving correspondence from Shree Jyoti's

attorney."[2] Ante at ___ (slip op. at 19-20).

I fail to see how Shree Jyoti's explicit request for the Borough to

"identify . . . the public purpose" for the "proposed acquisition" -- one of only

two requests in a letter that is barely one page long -- is not "substantively"

engaging with the Borough "regarding the . . . intended use for the

property." Ante at ___ (slip op. at 20). None of the majority's efforts to

downplay the Borough's failure to abide by its admitted legal obligation can

alter the fact that it is the Borough that refused to substantively engage with

Shree Jyoti's letter -- not the other way around -- and, therefore, and by its

own admission, the Borough failed to "turn square corners." Withholding the

---

[2] The majority claims that defendant did not "meaningfully develop[]" the argument that the Borough intentionally failed to respond to (i.e., "stonewalled") the direct question raised in the April 27 letter regarding the Borough's proposed public use. Ante at ___ (slip op. at 20). First, it is difficult to conceive of how much more the issue needed to be developed, once the Borough's counsel conceded that such a failure to respond is also a failure to "turn square corners," and second, at oral argument, Shree Jyoti's counsel clearly argued: "The record is clear that [Shree Jyoti], before the ordinance was adopted, sent a letter to [the Borough] . . . and asked . . . . 'What is the purpose of the taking?' . . . . There was a response . . . which acknowledged receipt of the letter . . . but never answered the question."

6

intended public purpose for the property in question when specifically asked is not "deal[ing] forthrightly," and is not abiding by the candor and transparency required by the "square corners" doctrine.[3] F.M.C. Stores Co., 100 N.J. at 426.

At the public hearing on April 28, 2022, the Borough introduced Ordinance 2022-08 for a second reading,[4] during which it sought to acquire Shree Jyoti's property. Despite its knowledge of the specific public purpose for the taking, the Borough did not include it in Ordinance 2022-08, instead again offering the generic statement "that the acquisition of the property is in the furtherance of a public use and purpose."

The Borough's conduct after the passage of Ordinance 2022-08 only underscores its lack of transparency. Upon filing its initial complaint on July 19, 2022, the Borough continued to withhold the public purpose intended for Shree Jyoti's property. The trial court accordingly dismissed the Borough's complaint without prejudice, "because it . . . indicated that the taking was for

---

[3] Because this Court mandates that municipalities "turn square corners," I disagree with the majority's statement that "the dispositive issue before us is not whether the Borough could have acted with greater candor." Ante at ___ (slip op. at 19). Our mandate that municipalities "turn square corners" and act with "greater candor" makes the Borough's conceded failure dispositive -- as it was in Getzel Bee, LLC, ___ N.J. at ___ (slip op. at 25).

[4] As discussed by the majority, the first reading had occurred two weeks prior, at a Council meeting on April 14, 2022. Ante at ___ (slip op. at 4). Similarly, there is nothing in the record that indicates that the Borough disclosed the intended public purpose for the taking in question at this meeting.

7

purposes of public use, but [did] not specify[] any particular public use."
(emphasis added).

In fact, it was not until September 30, 2022, and for the purpose of amending its dismissed complaint, that the Borough finally disclosed its intention to use Shree Jyoti's property for a "parking lot with electric charging infrastructure."

To be clear, I agree with the majority that there is no statutory requirement to include the public purpose in the ordinance authorizing the taking. I also acknowledge that Shree Jyoti could have better complied with its obligations to negotiate prior to the April 28, 2022 hearing at which Ordinance 2022-08 was passed. As we have recognized, "it takes at least two to negotiate and the record should be reviewed with that in mind." State, by Comm'r of Transp. v. Carroll, 123 N.J. 308, 323 (1991) (quoting County of Monmouth v. Whispering Woods at Bamm Hollow, Inc., 222 N.J. Super. 1, 9 (App. Div. 1987)).

That said, the "square corners" doctrine is not, nor has it ever been, a balancing test. It is, as this Court has repeatedly held, a mandate that municipalities comport themselves with transparency, candor, and integrity. F.M.C. Stores Co., 100 N.J. at 426-27. Shree Jyoti's intransigence with regard

8

to its property being condemned does not turn our Court's "must" into a "may."

B.

I am unable to reconcile the Borough's deliberate refusal to disclose its intended public purpose for the taking of Shree Jyoti's property either with its well-established obligation to act forthrightly or with the majority's stated commitment to "ensure transparency." Ante at ___ (slip op. at 2). Indeed, even counsel for the Borough appeared unable to justify the Borough's decision to withhold the intended public purpose for Shree Jyoti's property, conceding at oral argument that she was "not exactly sure why" the Borough failed to specify the known public purpose in Ordinance 2022-08.

Furthermore, I find it difficult -- if not impossible -- to reconcile the holding in this case with our recent decision in Getzel Bee, LLC, where we found that a "vague, inaccurate, and pretextual" public purpose is unacceptable and must be rejected. Getzel Bee, LLC, ___ N.J. at ___ (slip op. at 25). If a municipality can be found to have failed to "turn square corners" by offering a pretextual public purpose, it is unclear how, exactly, it can satisfy its obligation to act "forthrightly" by refusing to disclose its known public purpose for the property in question when asked.

9

While I concur with the majority's conclusion that neither the LLBL nor EDA imposes "any requirement that the condemning municipality specify the intended public use for the property it is taking in the <u>ordinance</u> authorizing the acquisition of the property," <u>ante</u> at ___ (slip op. at 16-17) (emphasis added), it is telling that the Borough itself acknowledged that these statutes, at the very least, require the municipality to possess a public purpose at the time of enactment -- even if the Borough is not obligated to disclose it. Though neither I nor the majority can identify any statutory support for either requirement, a mandate to disclose in the authorizing ordinance would be consistent with the majority's guidance that the public purpose be articulated "at the earliest opportunity," <u>ante</u> at ___ (slip op. at 21), and would serve to prevent the very "stockpiling" of property that the majority cautions against, <u>ante</u> at ___ (slip op. at 13).

Mindful that "'the Legislature [is] free to decide' what elements to include in a statute and, perhaps more importantly, what elements not to include," I respectfully recommend that the Legislature consider requiring that municipalities disclose the intended public purpose for the property in question at the time of adopting an ordinance authorizing the taking of that property. <u>Blackridge Realty, Inc.</u>, 481 N.J. Super. at 200-01 (alteration in original) (quoting <u>State v. Munafo</u>, 222 N.J. 480, 490-91 (2015)).

10

## III.

The "square corners" doctrine requires only that municipalities engage with their citizenry in a "forthright" manner -- with transparency and candor -- qualities that we have a right to expect and that this Court has been put in a position to enforce. To ignore this principle at a time when the municipality, itself, concedes that to not disclose the known public purpose when asked is a complete failure to "turn square corners," is a position that I simply cannot join.

It is for these reasons that I would reverse the judgment of the Appellate Division.